UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANIMAL LEGAL DEFENSE FUND, INC.**,<br><br>Plaintiff,<br><br>v.<br><br>**SONNY PERDUE, Secretary of Agriculture**, **and UNITED STATES DEPARTMENT OF AGRICULTURE**,<br><br>Defendants. | Case No. 17-cv-2252 (CRC) |

## **MEMORANDUM OPINION**

This Court is asked to adjudicate for the second time whether the Department of Agriculture ("USDA") properly denied a request by the Animal Legal Defense Fund ("ALDF") to intervene in administrative proceedings against the Cricket Hollow Zoo. Last year, after ALDF challenged the first denial, the Court found that USDA's Judicial Officer had incorrectly applied the relevant law, vacated his decision, and remanded the case to the agency for reconsideration. See ALDF v. Vilsack, 237 F. Supp. 3d 15 (D.D.C. 2017). Upon reconsideration, the Judicial Officer once again denied ALDF's request to intervene, prompting this related case in which ALDF contends that he again acted arbitrarily, capriciously, and contrary to law.

ALDF now moves for summary judgment and asks the Court to order the Judicial Officer to permit its intervention. USDA, for its part, moves to dismiss the case as moot or, in the alternative, seeks summary judgment in its favor. The Court concludes that because it could grant ALDF an effective remedy, the case is not moot. Accordingly, the Court will deny USDA's motion to dismiss. But the Court also finds that the Judicial Officer's denial of ALDF's

intervention applied the correct legal standards and did so in a reasonable way. Therefore, the Court will grant USDA's motion for summary judgment and deny ALDF's.

I.  **Background**

The Court's decision in the earlier iteration of this dispute details many of the relevant facts underlying USDA's enforcement action and ALDF's desired intervention. See Vilsack, 237 F. Supp. 3d at 19–20. The Court summarizes here.

The Animal Welfare Act of 1966 ("AWA"), 7 U.S.C. § 2131 *et seq*., and its implementing regulations establish minimum standards of care and treatment for animals exhibited to the public. The Animal and Plant Health Inspection Service ("APHIS"), a component of USDA, licenses animal exhibitors under the Act and enforces its care and treatment standards.

Pursuant to that authority, APHIS initiated an administrative enforcement action against Cricket Hollow Zoo, a family-owned menagerie in Manchester, Iowa with a history of non-compliance with the AWA's care and treatment standards. ALDF, which had previously sued Cricket Hollow directly and had sued USDA for its continued renewal of Cricket Hollow's license, sought to intervene in the enforcement proceeding to advocate for revocation of the license and humane relocation of Cricket Hollow's animals ("relocation remedy"). The presiding administrative law judge ("ALJ") denied ALDF's motion and the Judicial Officer upheld that decision on appeal.

ALDF sued and this Court found that the Judicial Officer had acted arbitrarily and capriciously in denying intervention under § 555(b) of the Administrative Procedure Act ("APA"), which entitles "an interested person" to appear before an agency proceeding "[s]o far as the orderly conduct of public business permits[.]" 5 U.S.C. § 555(b). The Court held that the

Judicial Officer had failed to properly consider ALDF's stated interests in intervention and remanded the case to the Judicial Officer to reconsider ALDF's request. Vilsack, 237 F. Supp. 3d at 24. In so doing, the Court noted that courts "have for the most part permitted denials [of intervention] . . . when, for example, other parties to the proceeding adequately represent the would-be intervenor's viewpoint or intervention would broaden unduly the issues considered, obstruct or overburden the proceedings, or fail to assist the agency's decisionmaking." Id. at 22 (alteration in original) (quoting Nichols v. Bd. of Trustees of Asbestos Workers Local 24 Pension Plan, 835 F. 2d 881, 897 (D.C. Cir. 1987)).

On remand, the Judicial Officer again denied ALDF's intervention, in part because he concluded that its arguments for a relocation remedy would not be relevant or useful to the ALJ. Administrative Record ("A.R.") 696–705. ALDF again sued, contending that this determination failed to properly consider the ways in which the ALJ's enforcement powers could yield the relocation remedy. In the interim, the ALJ issued his decision, documenting significant AWA violations by Cricket Hollow, revoking its license, and imposing a civil monetary penalty. Id. at 708–887. Cricket Hollow administratively appealed that decision, and the appeal is pending. Id. at 894–95.

## II. Legal Standards

### A. Motion to Dismiss

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." Conservation Force, Inc. v. Jewell, 733 F. 3d 1200, 1204 (D.C. Cir. 2013) (quoting Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983)). A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Larsen v. U.S. Navy, 525 F.3d 1, 3–4 (D.C. Cir.

2008) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). A party may lack a legally cognizable interest in the outcome "when, among other things, the court can provide no effective remedy because a party has already obtained all the relief it has sought," Jewell, 733 F.3d at 1204 (internal quotation marks and punctuation omitted), or "when intervening events make it impossible to grant the prevailing party effective relief," Lemon v. Geren, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (internal quotation marks omitted).

Because mootness deprives the court of subject-matter jurisdiction, a motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1). See DL v. District of Columbia, 187 F. Supp. 3d 1, 5 (D.D.C. 2016). In assessing a 12(b)(1) motion, the Court must "treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." Jeong Seon Han v. Lynch, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (internal quotation marks omitted). Moreover, "the Court 'may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.'" Delta Air Lines, Inc. v. Export-Import Bank, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) (quoting Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

B. Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the proper stage for determining whether, as a matter of law, an agency action complies with the APA and is supported by the administrative record. Richards v. INS, 554 F.2d 1173, 1177 (D.C. Cir. 1977). The APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[.]" 5 U.S.C. §

706(2)(A). Arbitrary and capricious review is "narrow," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), and precludes the Court from "substitut[ing] its judgment for that of the agency," Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Rather, the Court must determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (internal quotation marks omitted). Even if the agency did not fully explain its decision, the Court may uphold it "if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc., 419 U.S. 281, 286 (1974). The Court's review is limited to the administrative record, Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 160 (D.C. Cir. 2003), and the party challenging an agency's action bears the burden of proof, City of Olmsted Falls v. FAA, 292 F.3d 261, 271 (D.C. Cir. 2002).

III. Analysis

    A. USDA's Motion to Dismiss

USDA moves to dismiss the case as moot on the theory that APHIS has already obtained all relief to which ALDF would be legally entitled in the enforcement action. See Defs.' Mot. Dismiss or Mot. Summ. J. ("Defs.' Mot.") at 10–13. ALDF sought to intervene to achieve two goals: revocation of Cricket Hollow Zoo's license and relocation of its animals. A.R. 588–89. USDA notes that the ALJ ordered the revocation—a decision currently on administrative appeal. USDA contends that, notwithstanding ALDF's desire to advocate for the relocation remedy, the Judicial Officer concluded correctly that the AWA does not allow for such a remedy and thus, there is no additional legally authorized relief that ALDF could seek upon intervention.

5

USDA's motion to dismiss conflates what ALDF asks of this Court with what ALDF hopes to achieve in the underlying enforcement action. The crux of ALDF's claim here is not that it was impermissibly denied the relocation remedy, but that it was impermissibly denied the *opportunity to advocate* for that remedy. Its request of this Court is to restore that opportunity, so that ALDF can "participate in future hearings, motion practice, appeals, and settlement process with the right to petition to reopen the proceedings in the USDA's administrative proceeding against Cricket Hollow[.]" Compl. at 15. In short, ALDF interprets the AWA differently than USDA does, and it seeks to advance that interpretation in the administrative proceedings.

Because what ALDF seeks is the chance to advance its understanding of the law, the Court could order an effective remedy. If the Court were to order the Judicial Officer to permit intervention, ALDF would immediately have the right to partake in the proceedings and make its case regarding the AWA. For example, ALDF could appeal those aspects of the ALJ's enforcement order with which it disagrees, see 7 C.F.R. § 1.145, presumably focusing on the remedial measures that it believes are appropriate. That argument may well be futile, as USDA contends. But as the Court explained in its previous decision, § 555(b) is generally protective of that type of opportunity so long as it does not burden the proceedings. See Vilsack, 237 F. Supp. 3d at 22 ("Because nearly every agency decision—including those made by the agency in individual adjudications—implicates public policy, broad participation in agency proceedings . . . is often necessary."). Moreover, ALDF has indicated its desire to introduce evidence that it might use to support an independent request for confiscation of the animals, see Pl.'s Mot. Summ. J. at 21, which intervention might enable it to do, see 7 C.F.R. § 1.146; Compl. at 15.

Moreover, even if ALDF's relocation arguments are as futile as USDA contends, there is still the possibility that its other stated goal in intervention—the revocation of Cricket Hollow's license—is reversed on appeal. A Court order that ALDF be allowed to intervene would ensure its ability to protect that remedy on appeal or seek it again on potential remand. Cf. Alternative Research & Dev. Found. v. Veneman 262 F.3d 406, 410 (D.C. Cir. 2001) (appellate review of denied intervention-by-right is not mooted by stipulated dismissal of underlying case); see also Purcell v. BankAtlantic Fin. Corp., 85 F.3d 1508, 1511 n. 3 (11th Cir. 1996) (appeal from denial of intervention not mooted by entry of judgment in underlying case). This remains a "live" case in which the Court can grant an effective remedy. It will therefore deny USDA's motion to dismiss.

B. The Parties' Motions for Summary Judgment

The parties have filed cross-motions for summary judgment. ALDF contends that the Judicial Officer acted arbitrarily and capriciously in denying its intervention under § 555(b). Its claim rests largely on its objection to the Judicial Officer's conclusion that the ALJ lacked power to grant a relocation remedy. See Pl.'s Mot. Summ. J. at 17–21. USDA counters that the Judicial Officer's denial of intervention survives scrutiny because he rationally interpreted the ALJ's enforcement powers. See Defs.' Mot. 13–21. Because the parties' dispute regarding denial of intervention centers on the Judicial Officer's interpretation of the ALJ's powers, review of the former requires an inquiry into the latter. The Court will first evaluate the Judicial Officer's interpretation of the law to inform its assessment of his denial under § 555(b).

1. *Scope of Enforcement Powers*

The Judicial Officer concluded that the AWA provides no basis for USDA, as part of an enforcement proceeding, "to seize and relocate animals or to close a facility for violations."

A.R. 702. The Court reviews with deference this interpretation of the ALJ's statutory and regulatory authority. Chevron USA, Inc. v. NRDC, 467 U.S. 837, 842 (1984); Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 171 (2007); see also supra, Section II.B.

The enforcement proceeding was conducted pursuant to 7 U.S.C. § 2149. A.R. 702. The Judicial Officer interpreted § 2149 as authorizing the ALJ to impose only certain specified sanctions—"limited to revocation or suspension of an [AWA] license, assessment of a civil monetary penalty, and issuance of an order to cease and desist from future violations of the [AWA] and the Regulations." Id. On its face, the Judicial Officer's depiction of the ALJ's authority appears rational: section 2149 does indeed enumerate license revocation, license suspension, civil monetary assessment, and cease-and-desist orders as the penalties that USDA may impose. 7 U.S.C. § 2149.

ALDF insists, however, that the Judicial Officer interpreted the ALJ's authority too narrowly for two reasons. First, it contends that the ALJ has confiscation authority pursuant to § 2146(a), the AWA provision that authorizes USDA to investigate or inspect AWA licensees for compliance. See Pl.'s Mot. Summ. J. at 18–19. That provision directs USDA to promulgate regulations as "necessary to permit inspectors to confiscate . . . any animal found to be suffering" due to violations of the AWA. 7 U.S.C. § 2146(a). The regulations, in turn, authorize an APHIS official to confiscate and permanently relocate animals if temporary care provisions are insufficient.[1] 9 C.F.R. § 2.129. Responding to USDA's rebuttal that § 2146(a) authority is inapposite in a § 2149 enforcement proceeding, ALDF notes that: (1) § 2146(a) is a broad grant of regulatory discretion that does not foreclose the delegation of confiscation authority to the

---

[1] USDA disputes that an ALJ would qualify as an APHIS official in any event. See Defs.' Reply at 6.

ALJ; (2) in the Final Rule promulgating confiscation practices, USDA cited the full AWA—rather than just § 2146(a)—as the relevant statutory authority; and (3) past § 2149 enforcement proceedings have resulted in orders to cease and desist § 2146(a) violations. See Pl.'s Reply at 6–8.

But these arguments are unavailing in the face of the deference to which the Judicial Officer is entitled. At most, the first two arguments amount to the point that the Judicial Officer *could* have reasonably interpreted the statute and regulations to authorize an ALJ to order a relocation. Had the Judicial Officer reached that conclusion, ALDF's arguments about the breadth of the underlying statutory and regulatory provisions might sustain that decision. But an argument that the statute or regulations do not foreclose one legal interpretation is not tantamount to an argument that they require that interpretation. And ALDF's third point—that ALJs have, pursuant to § 2149, ordered licensees to cease and desist from § 2146(a) violations—does not undermine the Judicial Officer's interpretation. ALDF cites an order requiring a licensee to cease and desist from preventing inspections as required by § 2146(a). Pl.'s Reply at 7–8. But it does not explain why that order to stop illegally preventing inspections—plainly encompassed by § 2149's authorized penalty of "an order that [a licensee found to have violated the law] shall cease and desist from continuing such violation," 7 U.S.C. § 2149—indicates that USDA may exercise § 2146's confiscation authority in § 2149 proceedings.

ALDF also contends that § 2149's cease-and-desist authority encompasses a relocation remedy.[2] ALDF analogizes this authority to courts' injunctive power, insisting that each power's scope is sufficiently broad to match whichever underlying violations it addresses. Pl.'s

---

[2] USDA contends that ALDF failed to raise this argument at the administrative level, see Defs.' Mot. at 18, but the record indicates that it did, see, e.g., A.R. 187.

Mot. Summ. J. at 19–20. Accordingly, ALDF insists that when "a facility is systematically unable and unwilling to provide adequate care to its animals, an ALJ can use this cease and desist authority to order a facility to relocate animals to a facility that can provide adequate care." Id. at 20. But, while ALDF highlights language from cases to support its analogy, id. at 19–20, the cases themselves do not indicate that cease-and-desist power is as capacious as ALDF argues. In NLRB v. Express Publishing Co., the Supreme Court limited the scope of the agency-issued order and concluded that "[a]n appropriate order . . . would go no further than to restrain respondent from any refusal to bargain and from any other acts . . . interfering" with the collective-bargaining rights of respondents' employees—in other words, a standard order to cease and desist from future violations of law. 312 U.S. 426, 438 (1941). ALDF also cites Federal Trade Commission v. Ruberoid Co., but that case noted the "special competence" and discretion Congress afforded the Federal Trade Commission "to deal with problems in the general sphere of competitive practices." 343 U.S. 470, 473 (1952). Here, by contrast, ALDF cites no authority to suggest equivalently broad powers for ALJs in USDA enforcement proceedings. Cf. Brendsel v. Office of Fed. Hous. Enter. Oversight, 339 F. Supp. 2d 52, 64 (D.D.C. 2004) ("It is axiomatic that 'administrative agencies are vested only with the authority given to them by Congress.'" (quoting Gibas v. Saginaw Min. Co., 748 F.2d 1112, 1117 (6th Cir. 1984))).

Passing references to some flexibility in cease-and-desist authority do not support the idea that § 2149 cease-and-desist authority encompasses a relocation remedy, and they certainly do not render arbitrary or capricious an interpretation that it does not. Again, ALDF's arguments about the scope of § 2149 power at best support the conclusion that an alternative interpretation

10

of the ALJ's power would be reasonable, not that the Judicial Officer's interpretation was unreasonable. Because his decision was rational, it is entitled deference from the Court.

### 2. Denial of Intervention

Having concluded that the Judicial Officer rationally interpreted the ALJ's powers, the Court now assesses his denial of ALDF's intervention request. In denying ALDF's intervention, the Judicial Officer considered the following factors, identified in the Court's remand of his initial decision, as relevant to the § 555(b) inquiry:

> (1) the nature of the contested issues in the agency proceeding; (2) the prospective intervenor's precise interest in the agency proceeding; (3) the adequacy of representation of the prospective intervenor's interest provided by existing parties to the agency proceeding; (4) the ability of the prospective intervenor to present relevant evidence and argument in the agency proceeding; (5) the extent to which the prospective intervenor would assist in agency decision making; (6) the burden that intervention would place on the agency proceeding; and (7) the effect of intervention on the agency's mandate.

A.R. 698 (citing Vilsack, 237 F. Supp. 3d at 23.)

The Judicial Officer concluded that neither party to the proceeding represented ALDF's interest and its intervention would not impair the agency's mandate. Id. at 704. But he nevertheless denied intervention because:

> (1) due to the limited nature of the proceeding and contested issues, ALDF's appearance would not be useful; (2) ALDF is not able to present relevant evidence and argument; (3) ALDF is not able to assist the decision maker; and (4) ALDF's intervention would delay the final disposition of [the] proceeding and increase the cost of [the] proceeding.

Id.

ALDF's objects to the Judicial Officer's conclusion that its "input regarding humane disposition of Cricket Hollow's animals was 'not relevant' and 'would not assist the decision maker.'" Pl.'s Mot. Summ. J. at 17 (quoting A.R. 702–03). ALDF makes four arguments to this effect. Its first two contend that the decision was "based on an erroneous interpretation of law"

11

because a relocation remedy is possible under either APHIS's confiscation regulation or the ALJ's cease-and-desist authority pursuant to § 2149. Id. For the reasons discussed, supra Section III.A, the Judicial Officer rationally interpreted the AWA and his decision is entitled deference. And while ALDF objects to what it perceives as insufficient attention to some of its theories regarding the ALJ's enforcement powers, the Judicial Officer addressed and rejected in sufficient detail its core claim that the law countenances a relocation remedy. Cf. Buckingham v. Mabus, 772 F. Supp. 2d 295, 301 (D.D.C. 2011) (agency reasoning was sufficient under the APA when it "adequately addressed the substance of the argument . . . , even though it did not in the process enumerate every point made by [plaintiff] in support of that argument").

ALDF's next two arguments amount to an insistence that, even if the Judicial Officer's interpretation of the ALJ's formal powers were correct, his decision was nevertheless erroneous because there are other avenues through which ALDF could have argued for the humane disposition of animals. First, ALDF says, the ALJ "could at a bare minimum make specific findings pertinent to the disposition of the animals" to justify an independent request for confiscation. Pl.'s Mot. Summ. J. at 20–21. This contention goes less to ALDF's ability to present relevant argument and more to its ability to present relevant evidence that would form the basis of these findings. And the Judicial Officer addressed that issue. He concluded that the evidence ALDF could introduce would be either irrelevant or redundant to what was already in the record. A.R. 700–01. Further, the Judicial Officer concluded that "the hearing would have to be reopened if ALDF were to be allowed to present the evidence it seeks to introduce," thereby "increas[ing] the time necessary for the final disposition of th[e] proceeding and increas[ing] [its] cost[.]" Id. at 704. These assessments are plainly supported by the record. ALDF sought to introduce deposition testimony regarding Cricket Hollow's ability to care for

the animals in the future, while the proceeding dealt with past violations. Id. at 700. ALDF also sought to introduce veterinary records and animal death certificates, but APHIS had already introduced extensive veterinary-record evidence indicating AWA violations and the death certificates themselves did not demonstrate additional failures to comply with the AWA, inasmuch as an animal death is not necessarily an AWA violation. Id. at 701.

Finally, ALDF maintains that the Judicial Officer erred in concluding that ALDF could not provide relevant argument to assist the ALJ because of the possibility of a settlement. See Pl.'s Mot. Summ. J. at 21–22. Specifically, it insists that intervention would enable it to advocate for relocation of the animals during any potential settlement negotiations and reject any proposed settlement that excluded relocation. Pl.'s Mot. Summ. J. at 21, 29–30. But the possibility of settlement does not render the Judicial Officer's decision arbitrary or capricious. The operative question for the Judicial Officer was whether ALDF would assist in the ALJ's decisionmaking through relevant arguments. See Vilsack, 237 F. Supp. 3d at 24. To be sure, an ALJ plays some role in the settlement process, see 7 C.F.R. § 1.138, but as ALDF itself notes, under USDA's Rules of Practice, an ALJ is generally obligated to approve a consent decision. See id.; Pl.'s Mot. Summ. J. at 30. Accepting ALDF's argument would dilute the "relevant argument" inquiry beyond recognition. A prospective intervener will likely have something to say about a potential settlement by virtue of being an "an interested person." 5 U.S.C. § 555(b). But that alone cannot satisfy the relevant-argument considerations of the distinct question of whether an interested person's intervention would impede "the orderly conduct of public business." Id. That question is tethered to the nature of the proceeding. Were it otherwise, intervention rules applicable to targeted agency actions would be indistinguishable from those

13

governing rulemakings or licensing proceedings. As the Court has explained, that is not the case. See Vilsack, 237 F. Supp. 3d at 23–24.

In its Reply, ALDF contends that it "only need[ed] to show that its arguments promoting humane disposition [were] colorable to prevail on its intervention request," Pl.'s Reply at 6, because a "proposed intervenor is not required to submit or prevail on full remedies briefing as part of the motion to intervene," id. at 3. Simply put, ALDF maintains that the Judicial Officer approached this matter incorrectly by deciding that the ALJ lacked power to issue a relocation remedy when the pertinent question was whether ALDF could, upon intervention, make a colorable argument about the relocation remedy. But this elides that the Judicial Officer's denial was based on the conclusion that ALDF's arguments were *not* colorable. In its attempts to intervene, ALDF made clear its view that § 2146(a) authorizes ALJs to order relocation remedies and highlighted this view as a basis for intervention. See, e.g., A.R. 589, 622, 691. It also referenced cease-and-desist authority as another basis for this remedy. See, e.g., id. at 187. And APHIS responded, devoting extensive space to rebutting ALDF's views. Id. at 655. In other words, ALDF had ample opportunity to preview the substance of its desired merits briefing and did in fact signal its arguments. Nothing in § 555(b) prevents the Judicial Officer from denying ALDF's full merits participation once he concluded that the arguments presaged in ALDF's Motion to Intervene would not be useful because they were irrelevant to the proceeding. As explained supra, the Judicial Officer's interpretation of the ALJ's powers was rational and must be afforded deference. Once he made that rational determination, it was rational for him to conclude that ALDF would not be able to provide relevant arguments to assist the decision-making and thus was not entitled to a full round of briefings attempting to do so.

14

ALDF also maintains that the Judicial Officer erred in his assessment of the nature of the contested issues because he concluded that "[t]he proceeding is targeted and has no broad [ ] policy implications that affects a wide range of animal rights[,] advocates[,] humane societies[,] zoos or other persons." Pl.'s Mot. Summ. J. at 25 (alterations in original) (quoting A.R. 699–700). Rather, ALDF explains that while USDA frequently prevails in enforcement proceedings for violations of the AWA's care standards, it rarely attends to the fate of the animals, which raises broader policy implications. See id. at 25–26. But that purported pattern alone does not render the Judicial Officer's decision arbitrary or capricious. Of course, *any* agency action might have *some* consequences for public policy, but as the Court noted in its previous opinion,

> an individualized enforcement action against a single respondent . . . is more targeted in nature than, say, a formal rulemaking or licensing proceeding that affects a wide range of consumers and competitors . . . . [T]he purpose of such proceedings is simply to determine whether the respondent violated the law and, if so, what remedy should follow.

Vilsack, 237 F. Supp. 3d at 23. The Court explained in this context that there "may be occasions where a third party can offer relevant evidence as to liability or expertise with respect to appropriate remedies" in enforcement proceedings, id. at 23–24, but, as discussed, the Judicial Officer rationally concluded that this was not such a case because ALDF's proposed remedies were unavailable.

Finally, ALDF contends that the Judicial Officer's decision was arbitrary and capricious because it ignored the possibility of a limited intervention. See Pl.'s Mot. Summ. J. at 28–30. Contrary to ALDF's assertion, the Judicial Officer did consider such a possibility, specifically disagreeing with APHIS's contention that intervention would require a new hearing. A.R. 703–04. To be sure, the Judicial Officer's assessment omitted a detailed assessment of other types of tailored intervention. But "an agency's decision [need not] be a model of analytic precision to

15

survive a challenge. A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997) (alteration in original) (quoting Dickson v. Secretary of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995). Here, in light of the Judicial Officer's rational conclusions that ALDF could present no relevant, non-cumulative evidence and no arguments relevant to aiding the decision maker, the basis for his denial of limited intervention was discernable and sufficient under the APA.

Naturally, the parties' briefing debates a few particular aspects of the Judicial Officer's decision to which ALDF objects, but the Court must assess the totality of that decision. Overall, the Judicial Officer fulfilled his obligations on remand. He considered each of the factors that the Court identified in its initial decision, concluding that some cut in favor of intervention while others cut against it. He denied intervention based on an accurate understanding of the limited issues to be addressed in the proceeding. Further, he rationally interpreted the AWA and its implementing regulations as precluding the remedy for which ALDF sought to advocate. Balancing these findings against the costs of an intervention that would either require the re-opening of the evidentiary record or briefing arguments that were not useful to the agency's decision-making (or both), the Judicial Officer concluded that this was not an instance in which intervention would comport with § 555(b)'s principle that intervention should be permitted only "so far as the orderly conduct of public business permits[.]" Based on the record before him, the Judicial Officer made a rational decision that was neither arbitrary, capricious, nor contrary to the law.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss, grant Defendants' Motion for Summary Judgment, and deny Plaintiff's Motion for Summary Judgment. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: October 11, 2018